**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

---

|  |  |
|---|---|
| Richard Henderson, *on his own behalf and on behalf of all others similarly situated*, | : <br> : <br> : Civil Action No.: |
| Plaintiff, | : <br> : |
| v. | : <br> : |
| Charter Communications, Inc. D/B/A Spectrum, | : **CLASS ACTION COMPLAINT** <br> : **JURY TRIAL DEMANDED** <br> : |
| Defendant. | : <br> : |

---

For this Class Action Complaint, the Plaintiff, Richard Henderson, by and through his undersigned counsel, pleading on his own behalf and on behalf of others similarly situated, states as follows:

## INTRODUCTION

1.      Plaintiff, Richard Henderson ("Plaintiff"), brings this class action for damages, equitable relief, and declaratory relief from the illegal actions of Charter Communications, Inc. D/B/A Spectrum ("Spectrum" or "Defendant"), for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "the TCPA"), and the regulations promulgated thereunder.

2.      In the course of selling its services, Defendant and/or its agents or representatives placed thousands of automated calls to consumers' cell phones nationwide using an automatic telephone dialing system in violation of the TCPA.

3.      Plaintiff and each Class Member received unwanted telephone solicitation robocalls from Defendants. Moreover, Plaintiff and Class Members' phone numbers were registered with the National Do-Not-Call Registry.  This lawsuit challenges all calls that were sent

by Defendant to Plaintiff and Class Members from approximately November 24, 2016, through the date of filing this class action complaint.

4.      The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

5.      "Month after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the [FCC]."1  The TCPA is designed to protect consumer privacy by, among other things, prohibiting the making of autodialed or prerecorded-voice calls to cell phone numbers and failing to institute appropriate do-not-call procedures. 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(d).

6.      The FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.,* 759 F. Supp. 2d 1165 (N.D. Cal. 2010).

7.      In enacting the TCPA, Congress intended to give consumers a choice as to how companies may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer.  TCPA, Pub.L. No. 102–243, § 11. Toward this end, Congress found that:

---

1.      *In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, ¶ 1 (2015).

[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on TCPA's purpose).

## JURISDICTION AND VENUE

8.     This Court has original federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227; *see also Mims v. Arrow Fin. Serv., LLC*, 132 S.Ct. 740, 751-53 (2012).

9.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims in this case occurred in this District, including Defendant's transmission and marketing decisions regarding the unlawful and unwanted calls to Plaintiff, Defendant's retention of benefits and business opportunity due to the unlawful calls, from its headquarters and locations in this District.

10.     The Court has personal jurisdiction over Defendant because it conducts business in this state, maintain a registered agent in this state, markets its services within this state, employs individuals in this state, and has availed itself to the jurisdiction of this state by placing calls to Plaintiff and Class Members that originated from this state

## PARTIES

11.     Plaintiff is, and at all times mentioned herein was, an adult individual residing in Texas.

12. Defendant, Spectrum, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 400 Atlantic Street, Stamford, Connecticut 06901. Defendant's registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

13. Defendant, directly, individually, jointly, and/or in concert with another, or through other persons, entities or agents acting on its behalf, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused all of the wrongful acts and omissions, including the dissemination of the unsolicited phone calls that are the subject matter of this Complaint.

14. Defendant is authorized to engage in business in the State of Connecticut, and at all times mentioned herein were each a corporation and "person," as defined by 47 U.S.C. § 153(39).

15. At all times relevant Defendant conducted business in the State of Connecticut, within this judicial district.

16. Defendant utilizes telephone marketing services to send unsolicited marketing solicitation calls, including at least 7 unwanted phone calls to Plaintiff beginning in January 2020.

17. Defendant created, operated, approved, and/or ratified, the unsolicited marketing robocalls that are the subject of this lawsuit.

## FACTUAL ALLEGATIONS

18. Defendant is a company that engages in the marketing, promotion, sale, and finance of cable, telephone, and internet services to consumers across the country.

19. Defendant promoted and solicited its services and products through the use of the unlawful telemarketing campaign at issue in his action.

4

20. To increase its sales volume and profits, Defendant and/or its authorized sales agents repeatedly called thousands of consumers using an automatic telephone dialing system in violation of the TCPA.

21. When Plaintiff and the Class Members answered their phones, they heard silence for several seconds, followed by a distinct "click" sound before being transferred to a live agent, evidencing that the use of an automatic telephone dialing system was used to place the unwanted calls.

22.    Defendant and/or its authorized sales agents used an ATDS to conceal or "spoof" its actual phone number to trick Plaintiffs into answering a familiar number

**FACTUAL ALLEGATIONS SPECIFIC TO PLAINTIFF**

23. During all times relevant hereto, Plaintiff was a "person" as that term is defined under the TCPA.

24. Plaintiff registered his personal cell phone number ending in 7629 on the National Do-Not-Call Registry on or about November 11, 2010.

25. On January 10, 2020, Plaintiff received a call on his personal cell phone.

26. When Plaintiff answered his phone, Plaintiff heard silence for several seconds followed by a distinct "click" sound before eventually being transferred to a live agent. The live agent identified himself as "Mark" and stated that he was calling on behalf of Spectrum for the purpose of selling Plaintiff cables services through Spectrum.   When Plaintiff asked "Mark" for information on Spectrum the call was terminated.

27. On February 19, 2020, at 5:30 p.m. CST Plaintiff received another call from a phone number ending in 3247.  Plaintiff heard silence for several seconds followed by a distinct "click"

sound before being transferred to a live agent.  The live agent again stated that he was calling on behalf of Spectrum and inquired what services Plaintiff was currently using.  The live agent confirmed that: (a) he was employed by Spectrum; (b) he was paid by Spectrum; and (c) if Plaintiff wanted to learn more information about the company that he should visit www.spectrum.com. Plaintiff then notified the live agent that his telephone number was on the National Do-Not-Call List.  Plaintiff asked the live agent if he knew what the Telephone Consumer Protection Act was. As soon as Plaintiff asked this the questions, the live agent advised that Spectrum would not call his number anymore and the call was terminated by the live agent.

28. The very next day, on February 20, 2020, at 2:10 p.m. CST Plaintiff received another call on his cell phone from a phone number ending in 3275 - two digits off from the numbers that had previously called him.  This evidences Defendant's efforts to "spoof" or conceal its identity in order to increase the likelihood that Plaintiff would again answer the phone.

29. When Plaintiff answered his phone, Plaintiff again heard silence for several seconds followed by the same distinct "click" sound before being transferred to a live agent after several seconds of pause.  Plaintiff recognized the live agent's voice as the same individual that called him on February 19, 2020.  The live agent advised Plaintiff that he was calling from Spectrum  Plaintiff reminded the live agent that he had called Plaintiff just 24 hours prior and that he had promised Plaintiff that Spectrum would not make any further calls to his phone.  The live agent then advised the Plaintiff that his number was called because the company is using an automated telephone dialing system ("ATDS").  Plaintiff notified the live agent that using an ATDS without express consent to call a number on the National Do-Not-Call List is a violation of federal law.  The live agent advised Plaintiff he would put the number on the company's internal Do-Not-Call-List. Plaintiff reminded the live agent that he was supposed to do this back on February 19, 2020.

6

Plaintiff then requested to speak with the live agent's supervisor.  The supervisor then attempted to tell Plaintiff about Spectrum's special offers despite Plaintiff's clear instruction to Spectrum that he did not want to be solicited.  Plaintiff notified the supervisor that he was not interested in the offers and that Spectrum is violating the TCPA.  The supervisor then terminated the phone call.

30. On February 26, 2020, at 1:55 p.m. CST Plaintiff received yet another call on his phone from the same phone number ending in 3247 that had called Plaintiff on February 19, 2020. When Plaintiff answered his phone, Plaintiff again heard silence for several seconds followed by the same distinct "click" sound before being transferred to a live agent.  The live agent advised Plaintiff that he worked for Spectrum, which used to be Time Warner, and offered to buy out Plaintiff's existing contract with a different provider so that Plaintiff would sign up for an account with Spectrum.

31. On February 26, 2020, at 2:13 p.m. CST Plaintiff received another call on his phone from the same phone number ending in 3247 that had called Plaintiff earlier that day.  When Plaintiff answered his phone, Plaintiff again heard silence for several seconds followed by the same distinct "click" sound before being transferred to a live agent.

32. On March 2, 2020, Plaintiff received a call from a Consumer Affairs agent at Spectrum named "Jacob" who notified Plaintiff that Spectrum had received a complaint regarding the unwanted calls Spectrum made to Plaintiff's personal phone.  Plaintiff advised the agent that he had received approximately 6 unwanted calls from Spectrum – many of which had occurred when he was at work causing distraction and interference. Plaintiff requested the e-mail address for Legal Affairs.  The agent on the call advised Plaintiff that he could not provide the contact information for Legal Affairs to Plaintiff.  During this phone call Plaintiff explained to the agent what happened during each of the unwanted calls made by or on behalf of Spectrum. After Plaintiff explained the

7

series of events to the agent, the agent conceded that these calls should have not been made and should have stopped.

33. Through the above unsolicited phone calls, Defendant contacted Plaintiff on Plaintiff's personal cellular telephone via his wireless telephone number, regarding an unsolicited service via an "automatic telephone dialing system" ("ATDS"), as defined by 47 U.S.C. § 227(a)(1) and prohibited by 47 U.S.C. § 227(b)(1)(A).

34. At the beginning of each call Plaintiff heard silence, followed by audible clicks that are associated with and indicate that an auto-dialer was used, and then after several seconds, the call was transferred to a live person.

35. Plaintiff knows and/or has reason to believe that the calls were placed using an automatic dialing system because of the sounds he heard, the delays he experienced, and the manner in which the calls were eventually transferred to a live operator after Plaintiff answered the unsolicited calls have attributes that resemble and that demonstrate indicia of an automatic dialing system.

36. Upon information and belief, these facts, along with the live sales agent's admission that an ATDS was used, demonstrate that the calls were made using an ATDS by Defendant or on behalf of Defendant through its actual and/or apparent agents. At a minimum, Defendant ratified the calls when it retained and/or attempted to retain the benefit of the calls to Plaintiff and Class Members.

37. Plaintiff had no prior relationship with Defendant and had never heard of Defendant before receiving the calls. Likewise, Plaintiff did not provide Defendant or any other person or entity his phone to receive or invite calls from Defendant, did not place his number on any list to

receive calls from Defendant, and did not otherwise consent to receiving the calls in any manner from Defendant.

38. Upon information and belief, this ATDS has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

39. Upon information and belief, this ATDS has the capacity to store numbers and to dial numbers without human intervention.

40. Upon information and belief, Defendant used a combination of hardware and software systems which have the capacity to generate or store random or sequential numbers or to dial sequentially or randomly in an automated fashion without human intervention.

41. Defendants utilized the ATDS to send the subject phone calls *en masse* to Plaintiff and Class Members using an autodial function regardless of whether these individuals had provided express written consent or had registered their phone numbers on the National Do Not Call Registry.

42. The content of the phone calls made to Plaintiff and the Class Members show that they were for marketing purposes and thus required Plaintiff's prior express written consent.

43. The telephone number Defendants called was assigned to a cellular telephone service for which Plaintiff incurs a charge for incoming calls pursuant to 47 U.S.C. § 227(b)(1).

44. These calls were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

45. Plaintiff did not provide Defendant or its agents prior consent to receive these calls to his cellular telephone; therefore, the unsolicited messages violated 47 U.S.C. § 227(b)(1).

46. Defendant is and was aware that it was placing unsolicited calls to Plaintiff and other consumers without their prior consent.

47. Defendant knew, or should have known, that it or one of its telemarketers was placing unsolicited calls through the use of an ATDS. Defendants have previously been sued for the same unlawful conduct alleged in this Complaint.

48. Plaintiff was damaged by Defendant's calls. In addition to using Plaintiff's cellular data, phone storage, and battery life, his privacy was wrongfully invaded, his seclusion was intruded upon, and Plaintiff has become understandably aggravated with having to deal with the frustration of repeated, unwanted phone calls, forcing him to divert attention away from his personal time and homelife, and causing disruption to his work and other activities. Not only did the receipt of the phone calls distract and take time away from Plaintiff's personal and work activities, but Plaintiff was also forced to spend time investigating the calls. *See Muransky v. Godiva Chocolatier, Inc.,* 905 F.3d 1200, 1211 (11th Cir. 2018). ("[T]ime wasting is an injury in fact"…. "[A] small injury… is enough for standing purposes").

49. To investigate the companies who were responsible for the unwanted, illegal and unauthorized calls to Plaintiff's personal cell phone, Plaintiff took time to investigate the source of the calls. But for Plaintiff's efforts, Defendant's identity would continue to be concealed.

50. Plaintiff had no relationship with Defendant prior to these illegal phone calls.

51. Plaintiff is pursuing this action on behalf of himself and others to stop Defendant from continuing to engage in unlawful and unwanted telemarketing. Without the injunctive power of the Court, Defendant will continue to utilize its telemarketing tactics and consumers, like Plaintiff, will continue to be injured and have their privacy violated.

## LIABILITY FOR CALLS PLACED BY THIRD PARTIES

52. To the extent Defendant outsourced its illegal robocalling, it is still liable for calls that violate the TCPA.

53. On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief. As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling,* 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

54. Moreover, the May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call. *Id.* at 6587 n. 107.

55. The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships… through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶46). Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of

demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶46).

56. Even if Defendant did not personally place the TCPA-violating calls, Defendant is still liable for the telemarketers' actions if they took steps to cause or approve the calls to be made, or if the calls were made pursuant to the Defendant's actual authority, apparent authority and/or ratification of the calls, and because they were acting as a joint enterprise or in concert with each other.

57. In the event telemarketers were used by Defendant, Defendant authorized their telemarketers to generate prospective customers. Defendant utilized a systematic telemarketing campaign whereby robocalls were placed in a seamless process to make it appear to Plaintiff and Class Members that Defendant was calling them directly from Defendant's telemarketing department.

58. Defendant hired, permitted, and enjoyed the benefits of the mass robocalling.

59. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See In re Rules & Regulations Implementing the TCPA,* CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (13) (1995).

60. The FCC stated within their January 4, 2008 ruling, that a company on whose behalf a telephone call is made bears the ultimate responsibility for any violations.

61. The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing

calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (34).

62. Defendant requested and sought from its telemarketers to solicit particular target customer profiles on a mass scale.

63. Defendant specified the criteria of potential customers that would be most profitable for Defendant to sell to after they had been robocalled.

64. Defendant integrated their systems with their marketers so they could access the records of people with whom they executed contracts.

65. On information and belief, Defendant had access to the sales and customers generated by the illegal robocalling at issue in this case.

66. The May 2013 FCC Ruling also clarifies circumstances under which a telemarketer has apparent authority.

67. Defendant authorized their marketers to generate prospective customers for them.

68. Plaintiff reasonably believed that telemarketers who called him had received permission and instructions to conduct activity on behalf of Defendant.

69. Further, Defendant ratified the unlawful calls by knowingly accepting business that originated through illegal robocalls.

70. Despite being on notice of frequent violations, Defendant continues to work with companies that perform illegal robocalling.

71. By accepting these contacts and relying on them to execute contracts, Defendant "manifest[ed] assent or otherwise consent[ed]… to act" on behalf of its telemarketers , as described in the Restatement (Third) of Agency.

72. Defendant further ratified the TCPA violations by knowingly accepting the benefit of large volume of sales, despite that these sales were generated illegally.

73. Defendant took advantage of the violations by having its salespeople solicit the prospective customers while turning a blind eye to the way the potential customer was identified

## CLASS ACTION ALLEGATIONS

A. **The Class**

74.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and all others similarly situated.

75.    Plaintiff seeks to represent, and is a member of the following class (the "ATDS Class"):

> All persons in the United States who, within the four (4) years prior to the filing of this Complaint received a call from Defendant or anyone on Defendant's behalf, to said person's personal cellular telephone number, advertising Defendant's services, without the recipients' prior express written consent in violation of the TCPA.

76.    Plaintiff seeks to represent, and is a member of the following class (the "Do Not Call Registry Class"):

> All people in the United States who from four years prior to the filing of this action (1) were called by or on behalf of Defendant; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.

77.     Defendant and their employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the class members number in the several thousands, if not more. Thus, this matter should be certified as a class action to assist in the expeditious litigation of this matter.

**B.  Numerosity**

78.     Upon information and belief, Defendant transmitted calls to the personal cellular telephone numbers of thousands of consumers throughout the United States without their prior express written consent.  The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

79.     The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery.  Identification of the Class members is a matter capable of ministerial determination from Defendant's records.

**C. Common Questions of Law and Fact**

80.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

a.  Whether Plaintiff and Class Members registered a phone number on the National Do Not Call Registry;

b.  Whether Defendant engaged in telemarketing content when it made the calls which are the subject of this lawsuit;

c.  Whether Defendant sent non-emergency text messages to Plaintiff and Class Members' cellular telephones using an ATDS;

d.  Whether Defendant can meet its burden of showing it obtained prior express written consent to send each message;

e.    Whether Defendant's conduct was knowing and/or willful;

f.    Whether Defendant is liable for damages, and the amount of such damages; and

g.    Whether Defendant should be enjoined from such conduct in the future.

81.    The common questions in this case are capable of having common answers.  If Plaintiff's claim that  Defendant routinely send automated text messages to telephone numbers assigned to cellular telephone services without prior express written consent is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**D.  Typicality**

82.    Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

**E.  Protecting the Interests of the Class Members**

83.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

**F.  Proceeding Via Class Action is Superior and Advisable**

84.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The interest of Class members in individually controlling the prosecutions of separate claims against Defendant is small because it is not economically feasible for Class members to bring individual actions.

85.    Management of this class action is unlikely to present any difficulties.  Several courts have certified classes in TCPA actions.  These cases include, but are not limited to: *Mitchem*

16

*v. Ill. Collection Serv.*, 271 F.R.D. 617 (N.D. Ill. 2011); *Sadowski v. Med1 Online, LLC*, 2008 WL 2224892 (N.D. Ill., May 27, 2008); *CE Design Ltd. V. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009); *Lo v. Oxnard European Motors, LLC*, 2012 WL 1932283 (S.D. Cal., May 29, 2012).

<u>**COUNT I**</u>
<u>**Violations of the Telephone Consumer Protection Act,**</u>
<u>**47 U.S.C. § 227(b), *et seq.***</u>
<u>**(Against Defendant on Behalf of Plaintiff and the ATDS Class)**</u>

86.    Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 85 above as though fully stated herein.

87.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system. . .to any telephone number assigned to a . . . cellular telephone service . . ." 47 U.S.C. § 227(b)(1)(A)(iii).

88.    Automatic telephone dialing system refers to "equipment which has the capacity---(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

89.    Defendant – or third parties directed by Defendant – used equipment having the capacity to randomly or sequentially generate telephone numbers and to dial such numbers without human intervention to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class defined above.

90.    These calls were made without regard to whether or not Defendant had first obtained express permission from the called party to make such calls. In fact, Defendant did not have prior express consent to call the cellular phones of Plaintiff and the other members of the putative Class when its calls were made.

91.     Defendant has, therefore, violated Sec. 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cellular phones of Plaintiff and the other members of the putative Class without their prior express written consent.

92.     The foregoing acts and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227 et seq.

93.     As a result of Defendant's negligent violations of 47 U.S.C. § 227 et seq., Plaintiff and the Class are entitled to an award of $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(B).

94.     At all relevant times, Defendant knew or should have known that its conduct as alleged herein violated the TCPA.

95.     Defendant knew that it did not have prior express consent to make these calls, and knew or should have known that its conduct was a violation of the TCPA.

96.     Because Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive autodialed calls, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3)(C) of the TCPA.

97.     Likewise, since Defendant knew or should have known that Plaintiff and Class Members did not give prior express consent to receive calls using an ATDS, the Court should treble the amount of statutory damages available to Plaintiff and members of the Putative Class pursuant to section 227(b)(3) of the TCPA.

98.     As a result of Defendant knowing and/or willful violations of 47 U.S.C. § 227(b), Plaintiff and the Class are entitled to an award of $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(b)(3)(C).

99.     Plaintiff and the Class are also entitled to and seek injunctive relief prohibiting such conduct in the future.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class members relief against Defendant, as set forth in the Prayer for Relief below

## COUNT II
## VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT – 47 U.S.C. §227
### (Against Defendant on Behalf of Plaintiff and the Do Not Call Registry Class)

100.    Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 85 of this Complaint as though fully stated herein.

101.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

102.    47 C.F.R. § 64.1200(e), provides that 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

103.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

104.    Based on information and belief, Defendant did not maintain or institute procedures to ensure that those on the do-not-call list did not receive telemarketing calls. If Defendant had, Plaintiff would not have been called.

105.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

106.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do No Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

107.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.  As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

108.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief

against Defendant, as set forth in the Prayer for Relief below

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant Plaintiff and the Class the following relief against Defendant as follows:

1. An order certifying this case as a class action, certifying Plaintiff as representative of the Classes, and designating Plaintiff's counsel as Class counsel;

2. Statutory damages of $500 per call in violation of the TCPA;

3. Willful damages at $1,500 per call in violation of the TCPA;

4. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

5. An injunction prohibiting Defendants from calling any individual whose number appears on the National Do Not Call Registry;

6. Reasonable attorney's fees and costs; and

7. Such further and other relief as this Court deems reasonable and just under the circumstances.

1. **TRIAL BY JURY DEMANDED ON ALL COUNTS**

Dated: November 25, 2020

Respectfully submitted,

By:    */s/ Sergei Lemberg*
Sergei Lemberg
**LEMBERG LAW, LLC**
43 Danbury Road
Wilton, CT 06897
Telephone: (203) 653-2250
Facsimile:  (203) 653-3424

**EGGNATZ | PASCUCCI**
7450 Griffin Road, Suite 230
Davie, Florida 33314
Tel: (954) 889-3359
*Counsel for Plaintiff*

By: */s/ Joshua H. Eggnatz*
JOSHUA H. EGGNATZ, ESQUIRE
Florida Bar No. 0067926
(*PHV forthcoming*)
*jeggnatz@justiceearned.com*
*jeggnatz@justiceearned.com*
*sgizzie@justiceearned.com*

**JORDAN RICHARDS, PLLC**
805 East Broward Blvd. Suite 301
Fort Lauderdale, Florida 33301
Tel: (954) 871-0050
*Counsel for Plaintiff*

By: */s/ Jordan Richards*
JORDAN RICHARDS, ESQUIRE
Florida Bar No. 108372
*Jordan@jordanrichardspllc.com*
*Melissa@jordanrichardspllc.com*
*Jake@jordanrichardspllc.com*
(*PHV forthcoming*)

*Attorneys for Plaintiff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 25, 2020 a copy of the foregoing was filed electronically

through the Court's CM/ECF system which will be served on the Defendant via process server.

 */s/ Sergei Lemberg*
Sergei Lemberg